May it please the court, my name is Anna Hughes Malmberg. I represent plaintiffs' appellants Jason and Shelly Johnson individually and on behalf of their minor son as co-conservators. I would like to reserve two minutes for rebuttal please. Your honors, summary judgment was granted in the district court. The Johnsons allege that there are genuine issues of material fact which exist in this case. This case, as the court is aware, involves two 1989 Chevy Suburbans. Let me let me ask you something and I hate to do this so quickly because you're just barely up here, but as I understand it you only appeal that the district court erred in concluding the mistake was mutual rather than unilateral? Correct, your honor. And therefore erred in concluding that reformation is not barred? That's correct. And any other issue the district court made you left on the table? I think I understand what you're asking. I did raise the issue that I thought the district court made some factual errors in its conclusion. Well I understand that but we really only have two issues in front of us. One was whether the mistake was mutual or not and whether therefore we should reform or not. That's correct. I mean the title is not in That's correct. There are a couple of... I mean we can't talk about then whether this was really a title problem or whether they should be responsible because they still kept the title. You didn't put that up here. The only thing I have in front of me is the mutual mistake. That's correct. But I think there are a couple of factual issues that are related to the issue of mutual mistake. The two of those suburbans were sold to employee Wayne Deans and I think that's important for the court to know. All right, let me ask you another question. If we're really only dealing with mutual mistake, we're really only trying to interpret the Montana law 28-2-1611, aren't we? That's correct. Let me ask you this. Then on summary judgment, what is the standard of review in Montana? In Idaho, for instance, if in fact it's a declaratory judgment and the standard is a summary judgment standard and in general the declaratory judgment would be a court-determined declaratory judgment, we give the district court a little more advantage to weigh evidence from affidavits. That's correct. Is this the standard in Montana? It's my understanding on summary judgment in Montana if in fact the court's going to make the ultimate decision based on the evidence in front of it, even at a trial, that at that point then those affidavits submitted to the court would then be allowed to have, the court would be allowed to give some weight to those affidavits, not necessarily construe them all in favor of the opposing party, but just look at them since they'll have the ultimate conclusion and try to weigh between them. Does that happen in Montana? I think that's correct. That does happen in Montana. However, if the court has to draw any factual inferences from those affidavits, the court is required in Montana to draw the inferences in favor of the non-moving party. But wasn't the intent of both the parties in this particular situation to remove a particular suburban from the insurance contract? That's correct. So if that was the intent of both parties to remove the particular suburban from the insurance contract, then that didn't happen here because of their mistakes. So isn't the issue over? No. I mean, as I understand 28.2.16.13, that's again Montana, I'm not there, but I, Idaho, we've had a lot of Montana law in front of us. As I understand 28.2.16.13, it suggests that in was intended to mean what were intended to be its legal consequence, and they're not confined to the language of the instrument. So given that statute, if the intent of both parties was to remove this car from the insurance contract, and they didn't do it because of their mistakes, then it seems to me it's a mutual mistake. If that were the case, Your Honor, but that I don't believe is the case here. American intended to remove the 5803 suburban. They didn't know which suburban ruling intended to delete, and I don't think it's clear from the record which suburban ruling intended to delete. If you look at the affidavits of Glenn Hugh and Tom Holland, neither one of those affidavits or declarations state exactly which suburban they're referring to. And we do have these two suburbans, both of which were sold to Wayne Deans. But we don't need to have mutual fault. We only need to have mutual intent, don't we? That's correct. We have to have mutual intent in this case as to the specific vehicle that was to be removed from the policy, because the policy itself only provided insurance for specifically described automobiles. So we're not looking at ownership. We're not looking at an entire fleet of vehicles. We're looking at the specific vehicle. And it's my position that American was required to garner the necessary information to make the proper change request to the policy, because it had a legal duty to do so. In Montana, a mistake of fact is defined as a mistake which is not caused by the neglect of a legal duty. Well, wasn't the person who transmitted the information to the insurer, the bank, the bank officer, wasn't he the agent of the ranch? He was, Your Honor, and we don't dispute that. So it was the ranch's goof in not getting the right vehicle dropped from the insurance, wasn't it? I don't think that's correct. Well, whose fault was it? It's Americans' fault. I mean, I don't think it's clear from the record that either Glen Hugh or Tom Holland, Tom Holland was the agent for Western States. If you look at their declarations, neither of those declarations specify which vehicle they were referring to, but it doesn't state that they weren't referring to the 604 Suburban. Well, you have all kinds of companies with fleet insurance policies, and it's very important when they drop one to be sure which one is dropped. It's usually the company that's dropping the vehicle from its fleet policy that gets the information and gets it straight and gets it to the right people. Now, why isn't that the case here? I think that is the case here. I think Ruling had hired Glen Hugh to manage the ranch's insurances, and again, I don't think it's clear that he didn't provide that information. I think it was Americans, through their agent, I think it was Americans' burden to make sure that they had the right information. Well, who was America's agent? I'm not sure which agent took the information, and I'm not sure which agent... The ranch's agent said that, and he doesn't show any basis for saying so, but he said the agent was, the bank was the ranch's agent. I think he's Ruling, and there's no dispute on our part that Glen Hugh had the authority to make the changes requested by Ruling. So I think, in this case, American had the legal duty to get the right information. If they, if Glen Hugh hadn't provided the specific vehicle information to American, it was American's... Well, if the information had never gotten to the insurance company, no And they dropped both cars from their coverage. The ranch is bare naked with no insurance, isn't it? That's correct. That would be the case, and I think in that case, then reformation may be, probably it would be rescission of those two deleted vehicles. Then whichever vehicle was intended to be removed from policy may be removed, but the vehicle... I'm getting a little confused here, but... I'm surprised you're going to go to rescission. Your Honor, I... To rescind the contract itself? I, you know, I think this court maybe could rescind the change endorsement deleting the 5803 Suburban, but that doesn't remove the 6040 Suburban. This court isn't a trial court. What, if you prevail on this appeal and get a remand, what will be the disputed question of fact that will have to be tried? I think the disputed question of fact here is what vehicle ruling intended to delete, who owned the vehicle, because I think that speaks to which vehicle he intended to delete. These parties can say today whatever they'd like to say, but the court is going to have to look at what evidence can be presented of the party's intent at the time. What was in the minds of the parties when they made this contract? Was it to delete the 6040? Was it to delete the 5803? That vehicle was also sold to ruling. I don't think the record shows exactly what was in the party's minds at the time, except for it does show that American intended to delete the 5803 Suburban. Let me, let me, are you... Let me go to another part of the statute. It says that this can, this reformation can take place so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value. Now, it's my understanding you're really not arguing that Johnson acquired any rights in the accident itself. That's correct. So the only time that they could have required the rights were after the accident and after they had a judgment and then were given the rights by that person who may have had them, if any were had at all. Isn't that correct? I mean, they couldn't have got any rights before getting them from Reese, who consented to judgment and signed the rights. I agree with that. All right, then if that's the case, didn't your client know at that time that there was a dispute about whether they had any rights at all on this record? Yes, Your Honor. So if in fact that's the case, how can one say that the third person didn't get it in good faith? Your client absolutely knew what rights they were getting, which was the right to sue if they could, but they may not be able to because they'd already said they couldn't. So the best your people had was $25,000 for personal injury and the right to see if they couldn't get more. And it was disputed. That's correct, Your Honor. So how do you get to be a third person in good faith and for value? Your Honor, our argument is that the notice the Johnson's had at the time they accepted Reese's assignment of rights was notice that was comprised of some assertions by American that the Johnson's knew to be factually inaccurate. American asserted that the policy had lapsed. The Johnson's knew that the policy was in full force and effect. American asserted that the six of them... notice it may not have been. That's correct, and I don't want to give the impression here that the policy issue had been adjudicated before, but we did have a state court decision in the underlying tort litigation wherein the court held that the ranch had in effect an auto policy on the date of the loss. That is at ER... I believe it's 189. Yes, ER 189. Is it also true that Montana has never reformed an insurance policy? Your Honor, I don't think either myself or counsel has found that case. If there was, is one out there. Thank you. You can keep going. I'm done with my question. I have about a minute left, unless you have any other questions I'd like to reserve. Thank you. Good morning, Your Honors. May it please the court, counsel. Montana has reformed insurance policies, not automobile policies. I see. There are... there is no case in Montana that is precisely on point, and that's why in the underlying decision by Judge Lynch and then Judge Siebel, he relied upon the New York and the... the Frosted Meats case and the Getty's case, and then we've cited another case out of the state of Washington to this court that holds basically the same thing. But Montana has reformed insurance contracts, both to create and to defeat coverage, generally relying upon the statute that Your Honor has already cited, 1611. You want to identify yourself for the record? I'm sorry. My name is Robert Phillips. I'm from Missoula, Montana. Thank you, Your Honor. I appreciate that. This case, I think, presents a fairly well-established Montana law on the rescission of contracts going back nearly 100 years, at least, of Montana jurisprudence. And I believe that the facts that we have... we presented at the district court and the ones we bring before you here are likewise clear and convincing and give rise to the... to the remedy of reformation. Montana law does require that a party seeking to reform an agreement bring forward evidence that is clear, convincing, and, for what this is worth, satisfactory. I don't know exactly what the word satisfactory means, but we do know the burden that is on us that... to come forward with clear and convincing evidence. Your Honor, this is a corollary of the rule that a written contract is entitled to substantial validity presumption, and we had to overcome that in order to establish our entitlement to reformation below, which I think we did. If we do establish that, then the court sitting in equity is entitled to be moved to grant equitable relief in the nature of a reformation. That's exactly what the district court did here, and we think that's exactly what this court should do. Your opponent argues that, factually, both of these suburbans were sold to the same person? That was a misstatement by counsel, I think. I may have misheard. No, I wrote that down myself, but I think counsel misspoke. The 5083 suburban, which was the one that was erroneously deleted from policy, remained in the ownership of Ladder Canyon Ranch. The 6040 was the one that was sold to Dean. Only one vehicle was sold to Wayne Dean's. In order to establish our entitlement to reformation, we went to both sides of the contract to see what they would say in terms of declarations, both the insurer and the insured and their intermediaries, to establish that this contract, as written, was erroneous. All acknowledged that the wrong vehicle was removed from the policy. This included Glenn Hough. I'm not sure exactly how he pronounces his last name, H-O-U-G-H, and we had his affidavit, and he said, although he didn't specify which vehicle was to have been removed, he said, I told the agent, let me back up a moment. One of the requirements in the contract between Ladder Canyon Ranch and Wayne Dean's on the sale of this vehicle was that Dean's go put it on his own insurance. When he brought proof of his own insurance that the vehicle had been listed on his policy with Progressive, he showed that to Glenn Hough, and Glenn Hough said, okay, now I will take that vehicle off of the ranch's policy. But, and that's the reason I asked what was appealed, the title still remained with the ranch. Yes. And, in fact, the ranch kept the title until after the accident. That's correct. But we're not appealing the district court's idea that that title issue didn't have any effect. All we're here for is mutual mistake. That's correct. And the reason for that is that there's a statute in Montana that says in a conditional sales contract, the party that has the right to possession is deemed the owner. And so, it really was not an issue. Montana is not a state that is what we call a title state, and there is no legal liability, tort liability, for a person just because they hold title to a vehicle, as it would be, for instance, in New York. The record is clear that Dean brought to the ranch manager, owner, whatever, proof that the vehicle involved in the accident, which was later involved in the accident, was on Dean's policy. Correct. Just to be specific about that, he brought it to the banker that was the ranch's... U.S.B. Yes, U.S. Bank. Mr. Glenn Huff was the one that received that. He's the one that called and called the agent. And in this case, the magistrate judge's findings refer to Western States Insurance Agency as the agent for the Ladder Canyon Ranch. And we have argued in our brief that legally that's accurate. Well, isn't that really, now the use of the word agent, there's sort of a vernacular term for people who buy and sell insurance. That's right. It's a broker, isn't it? It's a broker. And it writes insurance for various companies. Yes. When it's writing insurance for American, is it American's agent? I think the answer to that is that if the insurer could place the insurance with any one of a number of different carriers, then it is the agent of the insured, not the insurer. If it is, however, more in the nature of a captive agent, then it is the agent of the insurer. But in any case, I don't think that this court is facing that issue, and I don't think Judge Lynch or Judge Siebel were facing that issue either, because the one clearly acknowledged to have been the agent of Ladder Canyon Ranch was Mr. Huff. And perhaps even more fundamentally, it doesn't make any difference how the mistake happened. In Montana, as in most states, negligence on the part of one party will not act as a bar to reformation. There is, as Montana has stated, there's always going to be a way to point the finger. It could easily be that the insurer should have verified that there were indeed two 1989 Suburbans insured on this policy, and perhaps should have looked. Likewise, the insurer issued a written change endorsement when it did modify the policy and took the wrong vehicle off of it, and that written endorsement went to Ladder Canyon Ranch. If they had looked at it and scrutinized it, as Your Honor had suggested a careful company might do with its sweet policies, it should have known. So we can both point the fingers at the other and say, you should have seen it, you should have seen it. In point of fact, it doesn't make any difference. And just to – that rule goes back a long way in Montana. In the 1914 case that's been cited to you, Parchin v. Chessman, the Montana Supreme Court ruled that the negligence on the part of one or another where reformation is sought is not a bar to that remedy. Indeed, I would point out that the citation to that case in the appellant's brief quotes a provision purportedly from that case that's not in that case. That is not Montana law. Montana law is exactly the opposite, that negligence on the part of one party or another will not bar it. Later in 2002, the Montana Supreme Court restated that issue in the case of E.S. Oftedal v. the State of Montana that the district court relied upon so heavily. It said that negligence will not preclude the remedy of reformation. An inadvertent mistake, even a negligent one, will not bar an action for reformation. Was that an insurance case? No. No, that case involved a construction contract bidding dispute between a contractor and the State of Montana. I would, though, I guess to anticipate your concern there, state that an insurance contract is still a contract. And we don't have any special rules in Montana or in most other states for the reformation of an insurance contract. It has been analyzed in Montana under the same statute that we analyze deeds and contracts for deeds, buy-sell agreements, conditional sales agreements, all done exactly the same way. So I guess what's good for the goose is good for the gander. As far as that goes, if the reverse were true and Ladder Canyon Ranch's suburban had been the one that got in this accident, they would be standing here arguing for reformation. Now the, and probably if given the affidavits that we are looking at here, the insurer would have a very difficult time avoiding that reformation, and counsel giving them advice would be saying, you are in trouble. So with regard to the second clause of 28-2-1611, the clause that you pointed out, Your Honor, that the reformation can result in prejudice to the rights of third parties who took rights for value. Beyond the description that you made pointing out that there was no value that they parted with, what they acquired was just what Ms. Reese had, which was the right to make an argument to a court that there was coverage. I'll just reiterate that the district court dealt with this issue significantly, and I think articulated the rationale very well. There was no reliance by the Johnsons on any of the grounds for denial of coverage that the company made. The court determined that the Johnsons had many items of notice that the company was claiming that there was no coverage and the basis for that, and that included a letter sent by Monique Carpenter, one of the claims people for American Insurance Company, in 2003, addressed the counsel for the Johnsons saying that there was no coverage because that vehicle had been dropped. Another important piece of evidence that the Johnsons had prior to their entering into the agreement was in the underlying state court litigation, Dr. Royling, Frank Royling, had answered discovery, and he had stated in that written discovery that American Insurance was saying that there was no coverage under this policy. So in terms of being, whether you want to call it a bona fide purchaser for value without notice, or a third party who might be prejudiced by it, we do not have that kind of an individual in the Johnsons. They knew what was going on. They knew that these arguments were going to be made. They weren't buying a pig in a poke. They knew precisely what they were getting. Two other cases, by the way, that if you were to ask me what's the best case on our side, I have to say that the closest cases are not Montana cases because we do not have a Montana case that reforms an insurance policy. The best cases, though, are the two cited by the district court. Those were the George Geddes and that Don Frosted Meat cases, both of which reformed an agreement to find coverage. And then in the face of the objection by the appellants that, well, reformation can only go that way. It can only find coverage. It can't defeat it. The district court cited two cases, the Truck Insurance v. Wilshire Insurance Company, which is a Cal App case from 1970 in which the California Appeals Court reformed a policy using statute identical to Montana's to defeat coverage and cut off the claim of a third party, precisely the situation we have here. And the Oregon Supreme Court, I think it was the Supreme Court of Oregon, decided the Murley case that is cited again by Magistrate Judge Lynch in 1973. We have carried our burden clearly and convincingly that reformation is appropriate here. We ask that the judgment of the district court be affirmed. Thank you, Your Honors. Thank you. You have another minute. Go ahead. Thank you, Your Honors. The first thing I want to point out and make very clear is that I did not misspeak. Both Suburbans were sold to Wayne Deans. That is found in Excerpts of Record 122. That's from Dr. Ruling himself where he states that 5803 Suburban was sold to Wayne Deans. So both were sold to him. Also, if Hugh did not specify which vehicle was to be removed from the policy again the agent of ruling, then American had the legal obligation to get the necessary information to make the change. Did you argue this in the district court, this case? Which? To the summary judgment. Did you argue the summary judgment? Oh, I did. I was the attorney arguing it. Yes, Your Honor. Because that particular fact never came out in there in its judgment at all. It is not. All right. Thank you. According to Ray v. State Fund and also Martin v. Crown Life, a party is required by law to get the necessary information to make the proper change request. If an insurance company acts knowing it has limited information and treats that limited information as sufficient, then it is barred from reformation.  Thank you, Your Honors. Case 08-35992, Johnson v. American Insurance Company, is submitted.
judges: Goodwin, Hawkins, Smith N. R.